Bernard S. Meyer, J.
Plaintiff, a New York resident, was injured in Massachusetts by a truck owned by the corporate defendant and operated by the individual defendant. The corporate defendant has no office or business in New York and no property in New York except as the obligations of its insurer have situs in New York. Whether the individual defendant was served does not appear. Service upon the corporate defendant was made by serving a corporate officer in Massachusetts, after an attachment served upon defendant’s liability insurer, American Employers Insurance Company, which maintains offices in New York and is duly licensed to do business here. The answer of the corporate defendant admits that the truck was operated with its knowledge and consent, but denies liability and sets up five separate defenses. Plaintiff moves to dismiss all of the defenses as legally insufficient. As to the second and fifth defenses and that part of the fourth defense based upon equal protection of the law, the motion is granted; as to the first and third defenses and the due process portion of the fourth defense, it is denied.
The first defense is that the court does not have jurisdiction of the person of defendant. CPLR 314 is entitled “ Service without the state not giving personal jurisdiction in certain actions ” and authorizes service without the State when property within the State has been levied upon. CPLR 320 (subd. [c]) provides that “In a case specified in section 314 * * * an appearance is not equivalent to personal service * * * if an objection to jurisdiction under paragraphs eight or nine of subdivision (a) of rule 3211, or both, is asserted * * * in the answer, unless the defendant proceeds with the defense after asserting the objection to jurisdiction and the objection is not ultimately sustained. ” The defense is thus expressly authorized and defendant ‘1 having done nothing further by way of defending on the merits, has incurred no personal liability as respects any judgment that may be rendered in the action on his default ’ ’ (Gazerwitz v. Adrian, 28 A D 2d 556, 557). The defense is, therefore, sufficient and cannot be stricken.
The third defense alleges that any judgment recovered can only be satisfied out of the res attached, which is the same as saying that the court has not personal jurisdiction of defendant. *378 Clearly, if defendant does not proceed with defense on the merits after having asserted its objection to jurisdiction, the judgment of the court will reach nothing but the res attached (Cooper v. Reynolds, 77 U. S. 308, 318; see Matter of Riggle, 11 N Y 2d 73, 76; 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 314.19). While redundant, the third defense is not legally insufficient.
The second defense is that the court does not have valid in rem or quasi in rem jurisdiction over defendant because the levy is null and void under the State and Federal Constitutions, and if enforced will deprive defendant of due process and equal protection of the laws. While in form the defense is permitted under CPLR 3211 (subd. [a], par. 9), it can succeed only if the obligations of the insurer to investigate, to defend, to indemnify and to make medical payments are not property within the State, for it has long been settled that ‘1 the State, through its tribunals, may subject property situated within its limits owned by non-residents to the payment of the demand of its own citizens against them” (Pennoyer v. Neff, 95 U. S. 714, 723). Plaintiff contends that whether those obligations are property has been settled by Seider v. Roth (17 N Y 2d 111); defendant argues that that case decided only that they are property within the meaning of CPLR 5201 and 6202 but did not consider the constitutional questions involved.
Among commentators there has been a good deal of discussion of the constitutional issues involved in the Seider case in particular, (Professor David D. Siegel, Supplementary Practice Commentary to CPLR 5201, McKinney’s Cons. Laws of N. Y., Book 7B, 1967 Pocket Part, pp. 13-30; Comment: 67 Col. L. R. 550; Notes: 8 B. C. Ind. •& Com. L. Rev. 147; 51 Minn. L. Rev. 158) and of quasi in rem jurisdiction in general (Developments in the Law: State-Court Jurisdiction, 73 Harv. L. Rev. Civ. 909, 948-966; Ann. 78 ALR 2d 397, 403-405). While, apparently, the constitutional issues were not argued in the Seider case and therefore were not decided by the Court of Appeals, the court concludes that the levy made is constitutionally sufficient to sustain jurisdiction quasi in rem and that the second defense must, accordingly, be dismissed.
That conclusion is based upon New York Life Ins. Co. v. Dunlevy (241 U. S. 518); Harris v. Balk (198 U. S. 215), and Morris Plan Ind. Bank of N. Y. v. Gunning (295 N. Y. 324). The Harris case held that Maryland had jurisdiction over a North Carolina debtor personally served as a garnishee while temporarily within Maryland’s borders and that North Carolina was, therefore, required in an action between the North Caro *379 lina debtor and his North Carolina creditor to give full faith and credit to the judgment in the Maryland garnishment proceeding which required that the amount due by the North. Carolina debtor to the North Carolina creditor be paid over to the latter’s Maryland creditor. The reasoning upon which that conclusion was based was stated (pp. 222-223) as follows: “ We do not see how the question of jurisdiction vel non can properly be made to depend upon the .so-called original situs of the debt, or upon the character of the stay of the garnishee, whether temporary or permanent, in the State where the attachment is issued. Power over the person of the garnishee confers jurisdiction on the courts of the State where the writ issues. BlacJcstone v. Miller, 188 TI. S. 189, 206. If, while temporarily there, his creditor might sue him there and recover the debt, then he is liable to process of garnishment, no matter where the situs of the debt was originally. We do not see the materiality of the expression ‘ situs of the debt, ’ when used in connection with attachment proceedings. If by situs is meant the place of the creation of the debt, that fact is immaterial. If it be meant that the obligation to pay the debt can only be enforced at the situs thus fixed, we think it plainly untrue. The obligation of the debtor to pay his debt clings to and accompanies him wherever he goes. He is as much bound to pay his debt in a foreign State when therein sued upon his obligation by his creditor, as he was in the State where the debt was contracted. We speak of ordinary debts, such as the one in this case. It would be no defense to such suit for the debtor to plead that he was only in the foreign State casually or temporarily. His obligation to pay would be the same whether he was there in that way or with an intention to remain. It is nothing but the obligation to pay which is garnished or attached. This obligation can be enforced by the courts of the foreign State after personal service of process therein, just as well as by the courts of the domicil of the debtor.” The Morris Plan case held that wages earned in Pennsylvania by a Pennsylvania resident could be attached in New York where the wage earner’s employer did business as a foreign corporation. Holding that Douglass v. Phenix Ins. Co. (138 N. Y. 209) (which had held -that a debt due by a foreign corporation had situs only at its domicile) had been abrogated by amendment to New York’s attachment statute, the court concluded that 'that statute authorized attachment of a debt due to a nonresident from a foreign corporation provided the foreign corporation is personally served in New York and *380 noted (p. 330) that: “ Harris v. Balk (198 U. S. 215) holds valid such levies and attachments when authorized by State law ’ ’.
The fact that the debt involved in the Harris case was liquidated and undisputed and the statement in the Harris opinion (p. 223) that “We speak of ordinary debts, such as the one in this case ” have been urged, in the light of the Dunlevy opinion, as features distinguishing the insurer’s obligations here involved. For a number of reasons the argument fails. First, at least to the extent of the medical payments obligation the debt is liquidated. Secondly, on any analysis based on the fairness of making the nonresident appear, the distinction is irrelevant, as the Supreme Court of California has held in Atkinson v. Superior Ct. (49 Cal. 2d 338, 346, app. dsmd. and cert. den. 357 U. S. 569) because: “ In both situations the nonresident can protect his interest in the property only by submitting to the jurisdiction of the court. ’ ’ Thirdly, the Dunlevy opinion, carefully read, is authority in support of, rather than against, upholding jurisdiction. In the Dunlevy case, plaintiff sued in California to recover the cash surrender value of an insurance policy issued by defendant to her father and, she claimed, assigned to her. Defendant insurer urged in bar of the action a Pennsylvania judgment in an interpleader action holding the assignment invalid. Creditors of Mrs. Dun-levy after obtaining an in personam judgment against her in Pennsylvania, issued execution against the policy, summoning both defendant insurer and the insured as garnishees. By then Mrs. Dunlevy had moved to California. Defendant insurer answering admitted indebtedness but at the same time began an interpleader action. Notice of the action was given Mrs. Dunlevy, but she did not appear. The United States Supreme Court held the interpleader judgment void as to Mrs. Dunlevy because the court had no jurisdiction over her person, but recognized that had the garnishment proceeded to judgment it would have been a disposition of the property binding upon her. That part of the opinion so holding appears at pages 520-521 and reads as follows: “Beyond doubt, without the necessity of further personal service of process upon Mrs. Dunlevy, the Court of Common pleas at Pittsburgh had ample power through garnishment proceedings to inquire whether she held a valid claim against the insurance company and if found to exist then to condemn and appropriate it so far as necessary to discharge the originad judgment. Although herself outside the limits of the State, such disposition of the property would have been binding on her. Chicago, R. I. & P. R. v. Sturm, 174 U. S. 710 ; Harris v. Balk, 198 U. S. 215, 226, *381 227; Louis. c& Nash. R. R. v. Deer, 200 U. S. 176; Balt. S Ohio R. R. v. Hostetter, 240 U. S. 620 ; Shinn, Attachment and Garnishment, § 707. See Brigham v. Fayerweather, 140 Massachusetts, 411, 413. But the interpleader initiated by the company was an altogether different matter. This was an attempt to bring about a final and conclusive adjudication of her personal rights, not merely to discover property and apply it to debts. And unless in contemplation of law she was before before the court, and required to respond to that issue, its orders and judgments in respect thereto were not binding on her. Pennoyer v. Neff, 95 U. S. 714; Shinn, Attachment and Garnishment, § 674. See Cross v. Armstrong, 44 Oh. St. 613, 623, 625.” (Emphasis supplied.) Thus, the Dunlevy holding was predicated not upon any distinction between liquidated and contingent claims (the same claim Avas involved in both the garnishment and the interpleader action), but on the fact that the interpleader action Avas in personam and could be sustained only by personal jurisdiction Avhereas the garnishment Avas quasi in rem and sustainable by jurisdiction over the property.
But, it is said, the only contacts Avith NeAv York in the instant action are that plaintiff is a resident of New York and the insurer does business in NeAAr York, and these are insufficient to meet the minimum contacts test of International Shoe Co. v. Washington (326 U. S. 310, 316); (see Professor Siegel’s Commentary, supra, p. 19; Developments in the Luav: State-Court Jurisdiction, supra; 73 Harv. L. Rev. 956, 959-960; Comment: 67 Col. L. R. 550, 571; Note: 8 B. C. Ind. & Com. L. Rev. 147, 151). While the minimum contacts test has been applied to jurisdictional problems involving individuals (Atkinson v. Superior Ct. supra; Owens v. Superior Ct., 52 Cal. 2d 822, Nelson v. Miller, 11 Ill. 2d 378), it has not been so applied when the individual was served personally within the forum. Indeed the International Shoe Co. opinion clearly recognizes the distinction now under discussion for it states only that “ due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts ” (p. 316). Just as forum presence of the defendant has always been sufficient, by itself, to sustain a personal judgment, so also forum presence of defendant’s property has always been sufficient, by itself, to sustain a judgment against defendant to the extent of that property (Pennoyer v. Neff, supra) and see the cases cited in the quotation from the Dunlevy opinion (supra). The Pennoyer opinion clearly states the reason and *382 negates the argument that any other contact than jurisdiction over property is required, in the following passage (pp. 723-724): ‘ ‘ Every State owes protection to its own citizens; and, when nonresidents deal with them, it is a legitimate and just exercise of authority to hold and appropriate any property owned by such non-residents to satisfy the claims of its citizens. It is in virtue of the State’s jurisdiction over the property of the non-resident situated within its limits that its tribunals can inquire into that non-resident’s obligations to its own citizens, and the inquiry can then be carried only to the extent necessary to control the disposition of the property. If the non-resident have no property in the State, there is nothing upon which the tribunals can adjudicate.”
Finally, as to the second defense it is necessary to note, in view of the condition stated in Harris v. Balk (supra), that notwithstanding the limitation of the constructive service provisions of section 59 of the Insurance Law to contracts made in New York, a foreign insurance company licensed to do business here is amenable to suit here on contracts made elsewhere provided service be made in accordance with CPLR 311 (Bisbee Linseed Co. v. Fireman’s Fund Ins. Co., 128 Misc. 851; see Perkins v. Benguet Min. Co., 342 U. S. 437), and that, therefore, defendant Sea Crest could maintain an action here against the garnishee, its insurer, American Employers Insurance Company.
The fourth defense is that insofar as CPLR 320 (subd. [c]) requires defendant to ¡submit to in personam jurisdiction in order to defend the action on the merits it violates the State and Federal Constitutions in that it deprives defendant of due process and equal protection. The equal protection argument is without merit for defendant Sea Crest is treated no differently than any other nonresident defendant who insures with a carrier, domestic or foreign, authorized to do business in New York, and, of course, is in no worse position than a resident New York defendant who is subject to in personam jurisdiction. Moreover, though defendant herein is Sea Crest and not its carrier, it may be noted, in view of the “direct action” analogy referred to in Beider v. Roth (17 N Y 2d 111, 114), that there is no equal protection infirmity in direct action (Watson v. Employers Liab. Corp., 348 U. S. 66, 70).
The same thing cannot be said of the due process argument. "While probably sustainable as a direct action procedure in view of New York’s interest in protecting its residents and itself as to medical and other care made necessary by the out-of-State injury (Watson v. Employers Liab. Corp., supra, *383 p. 72; see Oltarsh v. Ætna Ins. Co., 15 N Y 2d 111, 117), the 8eider procedure can be distinguished from the Watson case because the injury in Watson occurred in the State in which the action was brought. But as noted above, it is Sea Crest who is the defendant herein and the question to be determined, therefore, is whether it has been accorded due process. There can be no question that it received sufficient notice, for it was served in Massachusetts and has answered. But an equally important component of due proces is an ‘ ‘ adequate and realistic opportunity to appear and be heard in * * * defense ” (Nelson v. Miller, 11 Ill. 2d 378, 384, supra). Though seizure of the contractual obligations attached only gives New York courts jurisdiction to declare rights in that property, the condition attached to defendant’s right to defend its interest in that property is that it submit to in personam jurisdiction. The purpose of confronting a defendant with that dilemma is to afford “ a lever for obtaining personal jurisdiction over absent or non-resident defendants, whereby all the claims between the parties may be settled at one time and a multiplicity of suits avoided ’ ’ (Fourth Preliminary Report of the Advisory Committee on Practice and Procedure; N. Y. Legis. Doc., 1960, No. 20, p. 188); but CPLR 320 (subd. [c]) implements that purpose in draconian fashion giving no consideration whatsoever to the balancing of interests usually involved in the determination whether it is 11 reasonable and just, according to our traditional conception of fair play and substantial justice” (International Shoe Co. v. Washington, 326 U. S. 310, 320, supra) to require defendant either to give up the property seized or to sacrifice its right “ of remaining immune from the personal jurisdiction of a state with which he [it] had no substantial relationship” (Developments in the Law: State-Court Jurisdiction, 73 Harv. L. Rev. 909, 954), and, it may be added, of a State which otherwise can protect its own interest and that of its citizen only to the extent of the value of the property seized. As is permitted under our present rules of pleading the defense is stated in conclusory terms. On the present motion the court is not called upon to rule on the merits. It notes simply that the “debt” seized includes the carrier’s obligations to investigate, to defend and to indemnify, and that if judgment by default is permitted and those obligations are measured and paid over to plaintiff then, under CPLR 6204, the carrier 1 ‘ is discharged from his obligation to the defendant ’ ’ to investigate, to defend and to indemnify if plaintiff later sues in defendant’s home State. Defendant is thus deprived, both in New York and in its home *384 State, of the defense for which it contracted, unless it submits to personal jurisdiction in New York. Since the reasonableness and justice of such a procedure is open to question on the facts if not on the law, the defense insofar as it raises the issue of due process cannot be dismissed. In light of the views expressed concerning 1 ‘ minimum contacts ’ ’ in its discussion of the second defense (supra) the court reiterates that the present discussion concerns not whether due process is denied by taking jurisdiction over property but whether after jurisdiction has been taken due process is denied by so conditioning as effectively to prevent an ‘1 adequate and realistic” defense, indeed, in some circumstances any defense on the merits at all (see Comment: 67 Col. L. R. 550, 566-567).
The fifth defense is that the levy upon the contract of insurance made in a foreign State between defendant, a nonresident of New York, and the carrier is in restraint of commerce. To be noted first is the fact that the carrier has not sought, as did the carrier in Vaage v. Leivis (N.Y.L.J., Aug. 8, 1967, p. 10, col. 4) to intervene in its own right in this action. The defense is, therefore, concerned only with the burden upon interstate commerce as it affects defendant, not as it affects the particular carrier involved in the attachment or the insurance industry generally. Moreover, the defense is by its wording concerned not with defendant’s relation to interstate commerce generally, but with the specific attachment upon defendant’s contract of insurance with American. While the prohibition against burdening interstate commerce is not avoided by attaching the property of the nonresident defendant (Denver & Rio Grande Western R. R. Co. v. Terte, 284 U. S. 284), it is also clear that the “ forum being in other respects appropriate, jurisdiction is not lost because the property subjected to the attachment is an instrumentality of commerce” (International Milling Co. v. Columbia Co., 292 U. S. 511, 521). Since residence of the plaintiff, “ though not controlling, is a fact of high significance ” (ibid., p. 520; see, also, St. Louis, Brownsville S Mexico Ry. v. Taylor, 266 U. S. 200), and since it is clear, from defendant’s failure to deny paragraph second of the complaint or to deny the statement in the moving affidavit that defendant conducts its hotel and motel business solely at Falmouth, Massachusetts, that defendant is not engaged in interstate commerce in any way that can be said to be burdened by permitting suit in New York, the forum is in other respects appropriate. It follows that the fifth defense must be dismissed.